**EXHIBIT A**

Case: 1:25-cv-07522 Document #: 5-1 Filed: 05/21/25 Page 2 of 23 PageID #:129

FILED
5/14/2025 9:43 AM
Mariyana T. Spyropoulos
CIRCUIT CLERK
COOK COUNTY, IL
2025CH04154
Calendar, 10
32255846

**12-Person Jury**

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
## COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| ROBERT RUSH, individually, and<br>on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FLEX LTD., FLEXTRONICS<br>INTERNATIONAL USA, INC., and<br>FLEXTRONICS AMERICA, LLC,<br><br>Defendants. | Case No. **2025CH04154**<br><br>**JURY TRIAL DEMANDED**<br><br>Hearing Date: 6/13/2025 10:30 AM<br>Location: Court Room 2302<br>Judge: Moreland, Caroline Kate |

## CLASS ACTION COMPLAINT

Plaintiff Robert Rush ("Rush" or "Plaintiff"), individually and on behalf of all others similarly situated (the "Class"), by and through his attorneys, brings this Class Action Complaint ("Complaint") pursuant to the Illinois Code of Civil Procedure, 735 ILCS §§ 5/2-801 and 2-802, against Flex Ltd., Flextronics International USA, Inc., and Flextronics America, LLC (collectively, "Defendants"), as well as their subsidiaries and affiliates, to redress and curtail Defendants' unlawful collection, obtainment, use, storage, and disclosure of Plaintiff's sensitive and proprietary biometric identifiers and biometric information (collectively referred to herein as "biometric data"). Plaintiff alleges as follows upon personal knowledge as to himself, his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE ACTION

1.      Defendant Flex Ltd. is a diversified, multinational manufacturing company incorporated in Singapore, with subsidiaries and affiliates throughout the world, including in Illinois and this Circuit.

FILED DATE: 4/14/2025 9:43 AM  2025CH04154

2.    Defendants Flextronics International USA, Inc. and Flextronics America, LLC are Flex Ltd.'s primary American subsidiaries.

3.    Defendants operate four locations in Illinois, all in Buffalo Grove: 700 Corporate Grove Dr., Buffalo Grove, Illinois 60089; 800 Corporate Grove, Dr., Buffalo Grove, Illinois 60089; 850 Asbury Dr., Buffalo Grove, Illinois 60089; and 1011 Asbury Dr., Buffalo Grove, Illinois 60089.

4.    When an individual, including Plaintiff, first begins to work for Defendants, he or she is enrolled in a biometric timekeeping system using a scan of his or her facial geometry to monitor time worked by hourly workers.

5.    The biometric timekeeping system used by Defendants includes biometric timeclocks, software, and storage options. The information collected by Defendants' timekeeping system including, but not limited to, Plaintiff's and other workers' biometric identifiers and/or biometric information is stored in Defendants' database(s).

6.    Biometric identifiers and biometric information are not relegated to esoteric corners of commerce. Many businesses, such as Defendants', have incorporated biometric applications into their workplace in the form of biometric timeclocks or authenticators, and into consumer products, including such ubiquitous consumer products as checking accounts and cell phones.

7.    Unlike ID badges or time cards—which can be changed or replaced if stolen or compromised—a scan of facial geometry is a unique, permanent biometric identifier associated with each worker. Thus, Plaintiff and other workers are exposed to serious and irreversible privacy risks. For example, if a database containing scans of facial geometry or other sensitive, proprietary biometric data is hacked, breached, or otherwise exposed—like in the recent Google+, Equifax, Uber, Facebook/Cambridge Analytica and Marriott data breaches or misuses—individuals have

FILED DATE: 4/14/2025 9:43 AM   2025CH04154

**no** means by which to prevent identity theft, unauthorized tracking or other unlawful or improper use of this highly personal and private information.

8.     In 2015, a data breach at the United States Office of Personnel Management exposed the personal identification information, including biometric data, of over 21.5 million federal employees, contractors, and job applicants. U.S. Off. of Personnel Mgmt., *Cybersecurity Incidents* (2018), *available at* www.opm.gov/cybersecurity/cybersecurity-incidents.

9.     Illegal markets already exist for biometric data. For example, hackers and identity thieves targeted Aadhaar, the largest biometric database in the world, which contains the personal and biometric data—including fingerprints, iris scans, and facial photographs—of over a billion Indian citizens. Vidhi Doshi, *A Security Breach in India Has Left a Billion People at Risk of Identity Theft*, The Washington Post (Jan. 4, 2018), *available at* https://www.washingtonpost.com/news/worldviews/wp/2018/01/04/a-security-breach-in-india-has-left-a-billion-people-at-risk-of-identity-theft/?utm_term=.b3c70259fl38.

10.     In January 2018, an Indian newspaper reported that the information housed in Aadhaar was available for purchase for less than $8 and in as little as 10 minutes. Rachna Khaira, *Rs 500, 10 Minutes, and You Have Access to Billion Aadhaar Details*, The Tribune (Jan. 4, 2018), *available at* http://www.tribuneindia.com/news/nation/rs-500-10-minutes-and-you-have-access-to-billion-aadhaar-details/523361.html.

11.     In August 2019, it was widely reported that Suprema, a security company responsible for a web-based biometrics lock system that uses fingerprints and facial geometry scans in 1.5 million locations around the world, maintained biometric data and other personal information on a publicly accessible, unencrypted database. Josh Taylor, *Major Breach Found in Biometrics System Used by Banks, UK police and Defence Firms*, The Guardian (Aug. 14, 2019),

available at https://www.theguardian.com/technology/2019/aug/14/major-breach-found-in-biometrics-system-used-by-banks-uk-police-and-defence-firms.

12. In the United States, law enforcement, including the Federal Bureau of Investigation and Immigration and Customs Enforcement, have attempted to turn states' Department of Motor Vehicles databases into biometric data goldmines, using facial recognition technology to scan the faces of thousands of citizens, all without their notice or consent. Drew Harwell, *FBI, ICE Find State Driver's License Photos Are a Gold Mine for Facial-Recognition Searches*, The Washington Post (July 7, 2019), *available at* https://www.washingtonpost.com/technology/2019/07/07/fbi-ice-find-state-drivers-license-photos-are-gold-mine-facial-recognition-searches/?noredirect=on&utm_term=.da9afb2472a9.

13. This practice has been criticized by lawmakers. Some states, including Illinois, have refused to comply with law enforcement's invasive requests. *State Denying Facial Recognition Requests*, Jacksonville Journal-Courier (July 9, 2019), *available at* https://www.myjournalcourier.com/news/article/State-denying-facial-recognition-requests-14081967.php.

14. Recognizing the need to protect its citizens from situations like these, Illinois enacted the Biometric Information Privacy Act ("BIPA"), 740 ILCS § 14/1, *et seq.* in 2008, specifically to regulate companies that collect, obtain, store, use and/or disseminate Illinois citizens' biometrics, such as facial geometry scans.

15. Notwithstanding the clear and unequivocal requirements of the law, Defendants disregarded Plaintiff's and other similarly-situated workers' statutorily protected privacy rights by unlawfully collecting, obtaining, storing, disseminating, and using their biometric identifiers

FILED DATE: 4/14/2025 9:43 AM    2025CH04154

FILED DATE: 4/14/2025 9:43 AM    2025CH04154

and/or biometric information in violation of BIPA. Specifically, each Defendant violated BIPA because it did not and continues not to:

   a.   Properly inform Plaintiff and others similarly situated in writing of the specific purpose and length of time for which their biometric identifiers and/or biometric information were being collected, stored, and used, as required by BIPA;

   b.   Provide a publicly available retention schedule and guidelines for permanently destroying Plaintiff's and other similarly-situated workers' biometric identifiers and/or biometric information, as required by BIPA;

   c.   Obtain a written release from Plaintiff and others similarly situated to collect, store, disseminate, or otherwise use their biometric identifiers and/or biometric information, as required by BIPA; and

   d.   Obtain consent from Plaintiff and others similarly situated to disclose, redisclose, or otherwise disseminate their biometric identifiers and/or biometric information to third parties, as required by BIPA.

16.    Defendants also improperly disclose Plaintiff's and other similarly-situated workers' biometric identifiers and/or biometric information to at least one third-party vendor, ADP.

17.    Accordingly, Plaintiff, on behalf of himself as well as the putative Class Members, seeks an Order: (1) declaring that each Defendant's conduct violates BIPA; (2) requiring each Defendant to cease the unlawful activities discussed herein; and (3) awarding statutory damages to Plaintiff and the proposed Class.

## PARTIES

18.    Plaintiff Robert Rush is a natural person and at all times relevant was a resident of the State of Illinois.

19.    Defendant Flex Ltd. is publicly-trade international conglomerate incorporated in Singapore, which maintains its global headquarters in Austin, Texas and conducts business in the State of Illinois, including within Cook County.

FILED DATE: 4/14/2025 9:43 AM   2025CH04154

20. Defendant Flextronics International USA, Inc. is a California corporation that is registered with the Illinois Secretary of State and conducts business in the State of Illinois, including within Cook County.

21. Defendant Flextronics America, LLC is a Delaware limited liability company that conducts business in the State of Illinois, including within Cook County.

## JURISDICTION AND VENUE

22. This Court has jurisdiction over each Defendant pursuant to 735 ILCS § 5/2-209, because each Defendant conducts business in Illinois and committed the statutory violations alleged herein throughout Illinois.

23. Venue is proper in Cook County because Defendants are authorized to conduct business in this State, conduct business transactions in Cook County, and committed the statutory violations alleged herein in Cook County, Illinois.

## FACTUAL BACKGROUND

### I.     The Biometric Information Privacy Act.

24. In the early 2000s, major national corporations started using Chicago and other locations in Illinois to test "new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias." 740 ILCS § 14/5(c). Given its relative infancy, an overwhelming portion of the public became weary of this then-growing yet unregulated technology. *See* 740 ILCS § 14/5.

25. In late 2007, a biometrics company called Pay by Touch, which provided major retailers throughout the State of Illinois with fingerprint scanners to facilitate consumer transactions, filed for bankruptcy. That bankruptcy was alarming to the Illinois Legislature because suddenly, there was a serious risk that millions of fingerprint records—which, like other unique biometric identifiers, can be linked to people's sensitive financial and personal data—could now

6

be sold, distributed, or otherwise shared through the bankruptcy proceedings without adequate protections for Illinois citizens. The bankruptcy also highlighted the fact that most consumers who used the company's fingerprint scanners were completely unaware that the scanners were not actually transmitting fingerprint data to the retailer who deployed the scanner, but rather to the now-bankrupt company, and that their unique biometric identifiers could now be sold to unknown third parties.

26.    Recognizing the "very serious need [for] protections for the citizens of Illinois when it [came to their] biometric information," Illinois enacted BIPA in 2008. *See* Illinois House Transcript, 2008 Reg. Sess. No. 276; 740 ILCS § 14/5.

27.    Additionally, to ensure compliance, BIPA provides that, for <u>each</u> violation, the prevailing party may recover $1,000 or actual damages, whichever is greater, for negligent violations and $5,000, or actual damages, whichever is greater, for intentional or reckless violations. 740 ILCS § 14/20.

28.    BIPA is an informed consent statute, which achieves its goal by making it unlawful for a company to, among other things, collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information, unless it first:

a.    Informs the subject in writing that a biometric identifier or biometric information is being collected, otherwise obtained, stored and used;

b.    Informs the subject in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, otherwise obtained, stored, and used; and

c.    Receives a written release executed by the subject of the biometric identifier or biometric information.

*See* 740 ILCS § 14/15(b).

FILED DATE: 4/14/2025 9:43 AM  2025CH04154

29.     BIPA specifically applies to employees who work in the State of Illinois. BIPA defines a "written release" specifically "in the context of employment [as] a release executed by an employee as a condition of employment." 740 ILCS § 14/10.

30.     Biometric identifiers include retina and iris scans, fingerprints, voiceprints, hand scans, and—most importantly here—scans of facial geometry. *See* 740 ILCS § 14/10. Biometric information is separately defined to include any information based on an individual's biometric identifier that is used to identify an individual. *Id*.

31.     BIPA establishes standards for how companies must handle Illinois citizens' biometric identifiers and biometric information. *See, e.g.,* 740 ILCS § 14/15(c)-(d). For example, BIPA prohibits private entities from disclosing a person's or customer's biometric identifier or biometric information without first obtaining consent for such disclosure. *See* 740 ILCS § 14/15(d)(1).

32.     BIPA also prohibits selling, leasing, trading, or otherwise profiting from a person's biometric identifiers or biometric information (740 ILCS § 14/15(c)) and requires companies to develop and comply with a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting such identifiers or information has been satisfied or within three years of the individual's last interaction with the company, whichever occurs first. 740 ILCS § 14/15(a).

33.     The Illinois legislature enacted BIPA due to the increasing use of biometric data in financial and security settings, the general public's hesitation to use biometric information, and—most significantly—the unknown ramifications of biometric technology. Biometrics are

FILED DATE: 4/14/2025 9:43 AM   2025CH04154

biologically unique to the individual and, once compromised, an individual is at a heightened risk for identity theft and left without any recourse.

34.     BIPA provides individuals with a private right of action, protecting their right to privacy regarding their biometrics as well as protecting their rights to know the precise nature for which their biometrics are used and how they are being stored and ultimately destroyed. Unlike other statutes that only create a right of action if there is a qualifying data breach, BIPA strictly regulates the manner in which entities may collect, store, use, and disseminate biometrics and creates a private right of action for lack of statutory compliance.

35.     Plaintiff, like the Illinois legislature, recognizes how imperative it is to keep biometric identifiers and biometric information secure. Biometric information, unlike other personal identifiers such as a social security number, cannot be changed or replaced if hacked or stolen.

## II.     Defendants Violate the Biometric Information Privacy Act.

36.     By the time BIPA passed through the Illinois legislature in mid-2008, most companies who had experimented with using individuals' biometric data stopped doing so.

37.     However, Defendants failed to take note of the shift in Illinois law governing the collection, obtainment, use, storage, and dissemination of biometric data. As a result, each Defendant continues to collect, obtain, store, use and disseminate workers' biometric data in violation of BIPA.

38.     Specifically, individuals who work at Defendants' Buffalo Grove locations are required to have their facial geometry scanned to enroll them in Defendants' biometric timeclock(s) and biometric timekeeping system(s).

FILED DATE: 4/14/2025 9:43 AM   2025CH04154

39.     In accordance with Defendants' policies and practices, hourly-paid workers are required to use scans of their facial geometry as a means of identification and authentication, to clock-in and clock-out and record hours worked.

40.     Once enrolled, Defendants' workers' biometric identifiers and/or biometric information are transmitted to and stored on Defendants' database(s).

41.     Defendants fail to inform workers that they disclose their biometric data to ADP, Defendants' third-party payroll vendor; fail to inform workers that they disclose their biometric data to other, currently unknown, third parties, including those which host the biometric data in their data centers; fail to inform workers of the purposes and duration for which they collect their sensitive biometric data; and, fail to obtain written releases from workers before collecting, obtaining and/or disclosing their biometric data.

42.     Defendants failed, before first collecting Plaintiff's biometric data, to publish a written, publicly-available policy identifying retention schedules and guidelines for permanently destroying workers' biometric data when the initial purpose for collecting or obtaining it is no longer relevant, as required by BIPA.

43.     The Pay by Touch bankruptcy that catalyzed the passage of BIPA, as well as the recent data breaches, highlights why such conduct—where individuals are aware that they are providing a face scan, but not aware of to whom or for what purposes they are doing so—is dangerous. That bankruptcy spurred Illinois citizens and legislators into realizing that it is crucial for individuals to understand when providing biometric identifiers, such as a face scan, who exactly is collecting their biometric data, where it will be transmitted, for what purposes, and for how long. Defendants disregarded these obligations and  workers' statutory rights and instead

FILED DATE: 4/14/2025 9:43 AM    2025CH04154

unlawfully collect, obtain, store, use and disclose workers' biometric identifiers and information, without first receiving the individual's informed written consent, as required by BIPA.

44.     Defendants, before they first collected Plaintiff's biometric data, failed to implement retention schedules and guidelines for permanently destroying workers' biometric data, leaving them with no indication as to when or whether Defendants will destroy their biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of their last interaction with the company.

45.     Because Defendants failed to publish a BIPA-mandated data retention policy, nor disclose the purposes for their collection, obtainment, storage, and use of biometric data, workers have no idea whether any Defendant sells, discloses, rediscloses, or otherwise disseminates their biometric data. Moreover, Plaintiff and others similarly situated were not told to whom Defendants disclose their biometric data, or what might happen to their biometric data in the event of a merger or a bankruptcy.

46.     These violations raise a material risk that Plaintiff's and other similarly-situated individuals' biometric data will be unlawfully accessed by third parties.

47.     By and through the actions detailed above, Defendants disregard Plaintiff's and other similarly-situated individuals' legal rights in violation of BIPA.

III.    **Plaintiff Robert Rush's Experience**

48.     Plaintiff Robert Rush worked for the benefit of Defendants as a Box Truck Driver, moving products between their four Buffalo Grove locations from November 2019 until March 2025.

49.     During the entire time Plaintiff worked for Defendants, he was required to scan his facial geometry on Defendants' timeclock for use as an identification and authentication method to track his hours worked.

50.     Defendants subsequently stored Plaintiff's face scan data in their database(s).

51.     Plaintiff was required to scan his facial geometry each time he began and ended his workday, as well as each time he clocked in and out for meal breaks.

52.     Before they first collected Plaintiff's biometric data, Defendants failed to inform Plaintiff in writing or otherwise of the purposes and length of time for which his biometric identifiers and biometric information were being collected or obtained.

53.     Defendants did not receive a written release from Plaintiff to collect, obtain, store, or use his biometric identifiers and biometric information.

54.     Before they first collected Plaintiff's biometric data, Defendants failed to publish any publicly available retention schedules and guidelines for permanently destroying Plaintiff's biometric data.

55.     Defendants did not obtain Plaintiff's consent before transmitting, disclosing or disseminating his biometric data to ADP and other, currently unknown third parties.

56.     Plaintiff has continuously and repeatedly been exposed to the risks and harmful conditions created by each Defendant's multiple and separate violations of BIPA alleged herein.

57.     No amount of time or money can compensate Plaintiff if his biometric data has been compromised by the lax procedures through which Defendants capture, obtain, store, use, and disseminate his and other similarly-situated workers' biometric identifiers and/or biometric information.

FILED DATE: 4/14/2025 9:43 AM   2025CH04154

58.     A showing of actual damages is not necessary in order to state a claim under BIPA. *See Rosenbach v. Six Flags Ent. Corp.*, 2019 IL 123186, ¶ 40 ("[A]n individual need not allege some actual injury or adverse effect, beyond violation of his or her rights under the Act, in order to qualify as an "aggrieved" person and be entitled to seek liquidated damages and injunctive relief pursuant to the Act").

59.     As Plaintiff is not required to allege or prove actual damages in order to state a claim under BIPA, he seeks statutory damages under BIPA as compensation for the injuries caused by each Defendant. *Rosenbach*, 2019 IL 123186, ¶ 40.

## CLASS ALLEGATIONS

60.     Pursuant to the Illinois Code of Civil Procedure, 735 ILCS § 5/2-801, Plaintiff brings claims on his own behalf and as a representative of all other similarly-situated individuals pursuant to BIPA, 740 ILCS § 14/1, *et seq.*, to recover statutory penalties, prejudgment interest, attorneys' fees and costs, and other damages owed.

61.     As discussed *supra*, Section 14/15(b) of BIPA prohibits a private entity from, among other things, collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's or a customer's biometric identifiers or biometric information, unless it ***first*** (1) informs the individual in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the individual in writing of the specific purpose(s) and length of time for which a biometric identifier or biometric information is being collected, stored, and used; ***and*** (3) receives a written release executed by the subject of the biometric identifier or biometric information. 740 ILCS § 14/15.

62.     Plaintiff seeks class certification under the Illinois Code of Civil Procedure, 735 ILCS § 5/2-801, for the following class of similarly-situated individuals under BIPA:

All individuals in the State of Illinois who had their biometric identifiers and/or

biometric information collected, captured, received, obtained, maintained, stored or disclosed by any Defendant during the applicable statutory period.

63.     This action is properly maintained as a class action under 735 ILCS § 5/2-801 because:

      A.     The class is so numerous that joinder of all members is impracticable;

      B.     There are questions of law or fact that are common to the class;

      C.     Plaintiff's claims are typical of the claims of the class; and,

      D.     Plaintiff will fairly and adequately protect the interests of the class.

## Numerosity

64.     The total number of putative class members exceeds fifty (50) individuals. The exact number of class members can easily be determined from Defendants' records.

## Commonality

65.     There is a well-defined commonality of interest in the substantial questions of law and fact concerning and affecting the Class in that Plaintiff and all members of the Class have been harmed by each Defendant's failure to comply with BIPA. The common questions of law and fact include, but are not limited to the following:

      A.     Whether Defendants collected, captured, maintained, stored or otherwise obtained Plaintiff's and the Class Members' biometric identifiers or biometric information;

      B.     Whether Defendants properly informed Plaintiff and the Class Members of the purposes for collecting, obtaining, using, storing and disseminating their biometric identifiers or biometric information;

      C.     Whether Defendants properly obtained a written release (as defined in 740 ILCS § 14/10) to collect, use, store and disseminate Plaintiff's and the Class Members' biometric identifiers or biometric information;

      D.     Whether Defendants disclosed or redisclosed Plaintiff's and the Class members' biometric identifiers or biometric information;

      E.     Whether Defendants developed a BIPA-compliant written policy, made

FILED DATE: 4/14/2025 9:43 AM    2025CH04154

FILED DATE: 4/14/2025 9:43 AM   2025CH04154

available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied, or within three years of their last interaction with the individual, whichever occurs first;

F.    Whether Defendants complied with any such written policy (if one exists);

G.    Whether Defendants' violations of BIPA have raised a material risk that Plaintiff's and the putative Class Members' biometric identifiers and biometric information will be unlawfully accessed by third parties;

H.    Whether Defendants used Plaintiff's and the Class Members' face scans to identify them;

I.    Whether the violations of BIPA were committed negligently; and

J.    Whether the violations of BIPA were committed intentionally or recklessly.

66.    Plaintiff anticipates that Defendants will raise defenses that are common to the class.

## Adequacy

67.    Plaintiff will fairly and adequately protect the interests of all members of the class, and there are no known conflicts of interest between Plaintiff and class members. Plaintiff, moreover, has retained experienced counsel who are competent in the prosecution of complex litigation and who have extensive experience acting as class counsel.

## Typicality

68.    The claims asserted by Plaintiff are typical of the class members he seeks to represent. Plaintiff has the same interests and suffers from the same unlawful practices as the class members.

69.    Upon information and belief, there are no other class members who have an interest individually controlling the prosecution of his or her individual claims, especially in light of the relatively small value of each claim and the difficulties involved in bringing individual litigation

against one's employer. However, if any such class member should become known, he or she can "opt out" of this action pursuant to 735 ILCS § 5/2-801.

## **Predominance and Superiority**

70.     The common questions identified above predominate over any individual issues, which will relate solely to the quantum of relief due to individual class members. A class action is superior to other available means for the fair and efficient adjudication of this controversy because individual joinder of the parties is impracticable. Class action treatment will allow a large number of similarly-situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of effort and expense if these claims were brought individually. Moreover, as the damages suffered by each class member are relatively small in the sense pertinent to class action analysis, the expenses and burden of individual litigation would make it difficult for individual class members to vindicate their claims.

71.     Additionally, important public interests will be served by addressing the matter as a class action. The cost to the court system and the public for the adjudication of individual litigation and claims would be substantially more than if claims are treated as a class action. Prosecution of separate actions by individual class members would create a risk of inconsistent and varying adjudications, establish incompatible standards of conduct for Defendants and/or substantially impair or impede the ability of class members to protect their interests. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can and is empowered to fashion methods to efficiently manage this action as a class action.

## **FIRST CAUSE OF ACTION**
### **Violation of 740 ILCS § 14/15(a): Failure to Institute, Maintain and Adhere to Publicly-Available Retention Schedule**

72.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

FILED DATE: 4/14/2025 9:43 AM   2025CH04154

FILED DATE: 4/14/2025 9:43 AM   2025CH04154

73. BIPA mandates that companies in possession of biometric data establish and maintain a satisfactory biometric data retention—and, importantly, deletion—policy. Specifically, those companies must: (i) make publicly available a written policy establishing a retention schedule and guidelines for permanent deletion of biometric data (at most three years after the company's last interaction with the individual); and (ii) actually adhere to that retention schedule and actually delete the biometric information. *See* 740 ILCS § 14/15(a).

74. Each Defendant failed to comply with these BIPA mandates.

75. Each Defendant qualifies as a "private entity" under BIPA. *See* 740 ILCS § 14/10.

76. Plaintiff and the Class Members are individuals who have had their "biometric identifiers" collected or otherwise obtained by Defendants (in the form of their facial geometry scans), as explained in detail in Sections II and III, *supra*. *See* 740 ILCS § 14/10.

77. Plaintiff's and the Class Members' biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

78. Each Defendant failed to publish a publicly available retention schedule or guidelines for permanently destroying biometric identifiers and biometric information as specified by BIPA. *See* 740 ILCS § 14/15(a).

79. Each Defendant lacked retention schedules and guidelines for permanently destroying Plaintiff's and Class Members' biometric data, leaving them with no indication as to whether or when Defendants will destroy their biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of the individual's last interaction with the company.

80. On behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class

FILED DATE: 4/14/2025 9:43 AM   2025CH04154

Members by requiring each Defendant to comply with BIPA's requirements for the collection, obtainment, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS § 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS § 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3).

## SECOND CAUSE OF ACTION

**Violation of 740 ILCS § 14/15(b): Failure to Obtain Informed Written Consent and Release Before Obtaining Biometric Identifiers or Information**

81.  Plaintiff incorporates the foregoing allegations as if fully set forth herein.

82.  BIPA requires companies to obtain informed written consent from individuals when acquiring their biometric identifiers and biometric information. Specifically, BIPA makes it unlawful for any private entity to "collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifiers or biometric information unless [the entity] first: (1) informs the subject…in writing that a biometric identifier or biometric information is being collected or stored; (2) informs the subject…in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; ***and*** (3) receives a written release executed by the subject of the biometric identifier or biometric information…" 740 ILCS § 14/15(b) (emphasis added).

83.  Each Defendant fails to comply with these BIPA mandates.

84.  Each Defendant qualifies as a "private entity" under BIPA. *See* 740 ILCS § 14/10.

85.  Plaintiff and the Class Members are individuals who have had their "biometric identifiers" collected or otherwise obtained by each Defendant (in the form of their facial geometry scans), as explained in detail in Sections II and III, *supra*. *See* 740 ILCS § 14/10.

18

FILED DATE: 4/14/2025 9:43 AM 2025CH04154

86. Plaintiff's and the Class Members' biometric identifiers were used to identify them and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

87. Each Defendant systematically and automatically collected, obtained, used, stored and disseminated Plaintiff's and Class Members' biometric identifiers and/or biometric information without first obtaining the written release required by 740 ILCS § 14/15(b)(3).

88. Defendants did not properly inform Plaintiff and Class Members in writing that their biometric identifiers and/or biometric information were being collected, otherwise obtained, stored, used and disseminated, nor did Defendants properly inform Plaintiff and Class Members in writing of the specific purposes and length of term for which their biometric identifiers and/or biometric information were being collected, obtained, stored, used, and disseminated by each Defendant, as required by 740 ILCS § 14/15(b)(1)-(2).

89. By collecting, obtaining, storing, and using Plaintiff's and Class Members' biometric identifiers and biometric information as described herein, each Defendant violated Plaintiff's and the Class Members' rights to privacy in their biometric identifiers or biometric information as set forth in BIPA. *See* 740 ILCS § 14/1, *et seq.*

90. On behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and Class Members by requiring each Defendant to comply with BIPA's requirements for the collection, obtainment, storage, and use of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS § 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS § 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3).

FILED DATE: 4/14/2025 9:43 AM   2025CH04154

**THIRD CAUSE OF ACTION**

**Violation of 740 ILCS § 14/15(d): Disclosure of Biometric Identifiers and
Information Before Obtaining Consent**

91.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

92.     BIPA prohibits private entities from disclosing a person's or customer's biometric

identifiers or biometric information without first obtaining consent for that disclosure. *See* 740

ILCS § 14/15(d)(1).

93.     Each Defendant fails to comply with this BIPA mandate.

94.     Each Defendant qualifies as a "private entity" under BIPA. *See* 740 ILCS § 14/10.

95.     Plaintiff and the Class Members are individuals who have had their "biometric

identifiers" collected or otherwise obtained by each Defendant (in the form of their facial geometry

scans), as explained in detail in Sections II and III, *supra*. *See* 740 ILCS § 14/10.

96.     Plaintiff's and Class Members' biometric identifiers were used to identify them

and, therefore, constitute "biometric information" as defined by BIPA. *See* 740 ILCS § 14/10.

97.     Each Defendant systematically and automatically disclosed, redisclosed, or

otherwise disseminated Plaintiff's and Class Members' biometric identifiers and/or biometric

information to ADP and other third-party vendors without first obtaining the consent required by

740 ILCS § 14/15(d)(1).

98.     By disclosing, redisclosing, or otherwise disseminating Plaintiff's and Class

Members' biometric identifiers and biometric information as described herein, each Defendant

violated Plaintiff's and the Class Members' rights to privacy in their biometric identifiers or

biometric information as set forth in BIPA. *See* 740 ILCS § 14/1, *et seq.*

99.     On behalf of himself and the Class, Plaintiff seeks: (1) declaratory relief; (2)

injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by

FILED DATE: 4/14/2025 9:43 AM   2025CH04154

requiring each Defendant to comply with BIPA's requirements for the collection, obtainment, storage, use and dissemination of biometric identifiers and biometric information as described herein; (3) statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS § 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS § 14/20(1); and (4) reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3).

## PRAYER FOR RELIEF

Wherefore, Plaintiff Robert Rush respectfully requests that this Court enter an Order:

A.    Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff Robert Rush as Class Representative, and appointing Stephan Zouras, LLC as Class Counsel;

B.    Declaring that each Defendant's actions, as set forth above, violate BIPA;

C.    Awarding statutory damages of $5,000 for each intentional and/or reckless violation of BIPA pursuant to 740 ILCS § 14/20(2) or, in the alternative, statutory damages of $1,000 for each negligent violation of BIPA pursuant to 740 ILCS § 14/20(1);

D.    Declaring that each Defendant's actions, as set forth above, were intentional and/or reckless;

E.    Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class Members, including an Order requiring each Defendant to comply with BIPA when collecting, obtaining, storing, using and disseminating biometric identifiers and/or biometric information;

F.    Awarding Plaintiff and the Class Members their reasonable attorneys' fees and costs and other litigation expenses pursuant to 740 ILCS § 14/20(3);

G.    Awarding Plaintiff and the Class Members pre- and post-judgment interest, to the extent allowable; and

H.    Awarding such other and further relief as equity and justice may require.

Date:   April 14, 2025                              Respectfully Submitted,

                                                    */s/ James B. Zouras*

FILED DATE: 4/14/2025 9:43 AM   2025CH04154

Ryan F. Stephan
James B. Zouras
**STEPHAN ZOURAS, LLC**
222 W. Adams Street, Suite 2020
Chicago, Illinois 60606
312.233.1550
312.233.1560 *f*
rstephan@stephanzouras.com
jzouras@stephanzouras.com
Firm ID: 43734
**ATTORNEYS FOR PLAINTIFF**